UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No.: 05-54-KAJ |
| | ) | |
| ERIC DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Christopher S. Koyste, Esquire
Assistant Federal Public Defender
704 King Street, Suite 110
Wilmington, Delaware  19801
Attorney for Defendant Eric Davis

DATED: December 30, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.       Patrolman Sheeky Illegally Seized Mr. Davis by Questioning Him Outside of the Scope of the Traffic Stop. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.      Mr. Davis Invoked His <u>Miranda</u> Right to Remain Silent After His Rights Were Read to Him by Patrolman Sheeky. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    III.     Special Agent Hughes Impermissibly Elicited Statements From Mr. Davis By Creating a Coercive Environment, Making the Subsequent <u>Miranda</u> Waiver Involuntary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TABLE OF AUTHORITIES

CASES                                                                                                              PAGES

Colorado v. Connelly, 479 U.S. 157 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Davis v. United States, 512 U.S. 452 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Edwards v. Arizona, 451 U.S. 477 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Illinois v. Caballes, 125 S. Ct. 834 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Miranda v. Arizona, 384 U.S. 436 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Missouri v. Seibert, 542 U.S. 600 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ohio v. Robinette, 519 U.S. 33 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rhode Island v. Innis, 446 U.S. 291 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Hurst, 228 F.3d 751 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Walton, 10 F.3d 1024 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Young, 2005 U.S. Dist. LEXIS 25010 (E.D. Pa October 25, 2005) . . . . . . . . 2

Wong Sun v. United States, 371 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**ARGUMENT**

**I.      Patrolman Sheeky Illegally Seized Mr. Davis by Questioning Him Outside of the Scope of the Traffic Stop.**

The totality of the facts in this case demonstrate that Mr. Davis was seized when Patrolman Sheeky re-approached Mr. Davis and questioned him about facts outside of the scope of the traffic stop. An important fact in this totality analysis is that, as the Government admits, Patrolman Sheeky did not tell Mr. Davis that he was free to go after he returned to him his driver's license. The Government advanced that Ohio v. Robinette, 519 U.S. 33, 39 (1996) does not require a police officer to inform an individual that they are free to leave the scene of a traffic stop after a traffic citation or warning is issued. The Supreme Court in Robinette held that while there is no bright line rule as to reasonableness, informing a detained individual that he is free to go is a factor that must be considered in a district court's reasonableness analysis. See id. at 39-40.

As Mr. Davis argued, in his Opening Memorandum, that the relevant facts surrounding the traffic stop support a conclusion that Mr. Davis was seized the second time that Patrolman Sheeky approached him. During the second encounter, the intrusive environment was greatly heightened. Mr. Davis was asked to step out of his vehicle although he was not asked to step out during the first time that he and Patrolman Sheeky spoke (T-10, 41, 42).[1] When Patrolman Sheeky re-approached Mr. Davis' automobile, he had an additional police officer with him, Master Corporal Winch (T-15). Furthermore, Patrolman Sheeky continued to interrogate Mr. Davis by asking him the same questions that he previously did during the first encounter (T-45, 47). The fact that Mr. Davis was never

---

[1] "T" refers to the transcript of the October 4, 2005 evidentiary hearing. "VT" (video transcript) refers to Defense Exhibit 1 submitted at the suppression hearing which is a transcript of the audible portions of Special Agent Hughes' April 20, 2005 interrogation of Mr. Davis at the Delaware River and Bay Authority headquarters.

1

informed that he was free to end the encounter, when combined with the above facts, supports a conclusion that Patrolman Sheeky's actions were unreasonable when examined in its totality. Thus, this Court must hold that Mr. Davis was seized and that the evidence that was obtained as a result of this seizure must be suppressed. See Illinois v. Caballes, 125 S. Ct. 834, 836 (2005) ("[i]t is nevertheless clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution."); Wong Sun v. United States, 371 U.S. 471 (1963).

**II.     Mr. Davis Invoked His Miranda Right to Remain Silent After His Rights Were Read to Him by Patrolman Sheeky.**

The Defense asserts that Mr. Davis' statement to Patrolman Sheeky, that Davis understood his rights and was not sure that he wished to make any statements (T-18, 49, 50), was an effective communication of his right to remain silent. The Government responded, in its Answering Memorandum, by citing Davis v. United States, 512 U.S. 452, 459 (1994), which concerns the issue of whether an individual requested counsel, not whether an individual invoked their right to remain silent.

The Government's Answering Memorandum does not address United States v. Young, 2005 U.S. Dist. LEXIS 25010 at *4, 5 (E.D. Pa. October 25, 2005) in which the District Court for the Eastern District of Pennsylvania held that a suspect "must 'articulate his right to remain silent sufficiently clearly that a reasonable police officer would, under the circumstances, perceive it as such.'" Id. (citing United States v. Hurst, 228 F.3d 751, 759 (6th Cir. 2000)); see also Davis, 512 U.S. at 459. Furthermore, the Government's Answering Memorandum does not cite to any of Patrolman's Sheeky's testimony at the suppression hearing, which clearly showed that he treated Mr.

2

Davis' statement[2] to be an invocation of his Miranda right to remain silent (T-49-51). Sheeky stated "I just knew I wasn't going to ask him anything else related to the traffic stop because I didn't want him to say something and have a question later on if he invoked or not. So I again erred on the side of caution and just didn't ask him anything"[3] (T-49-50). Patrolman Sheeky's testimony reveals that he acted in an objectively reasonable manner by treating Mr. Davis' statements as an invocation of his Miranda right to not be questioned. Patrolman Sheeky did so because Mr. Davis' statement was clearly not a waiver of Miranda. Thus, under an objective standard, Mr. Davis' statement constitutes an invocation of his right to remain silent and not be questioned.

Therefore, this Court must conclude that Mr. Davis invoked his right to remain silent and suppress all evidence that was obtained as a result of the subsequent interrogation by Special Agent Hughes since Mr. Davis at no time initiated the conversation with the agent. See Edwards v. Arizona, 451 U.S. 477, 486 n.9 (1981).[4]

### III. Special Agent Hughes Impermissibly Elicited Statements From Mr. Davis By Creating a Coercive Environment, Making the Subsequent Miranda Waiver Involuntary.

The Government does not dispute that Agent Hughes made numerous statements to Mr. Davis prior to advising him of his Miranda rights. The Government also does not contest that Agent Hughes made additional statements to Mr. Davis after advising him of his rights, but prior to any waiver of his Miranda protections. In its Answering Memorandum, the Government attempts to paint

---

[2] After Mr. Davis was informed of his Miranda rights, Patrolman Sheeky asked him if he wished to talk, to which Davis replied "I'm not sure if I should, I'm really not." (T-18, 49)

[3] Patrolman Sheeky did ask Mr. Davis pedigree questions when he was being processed because Sheeky knew that he was permitted to ask these types of questions even if an individual invoked their Miranda right to remain silent (T-51).

[4] The Government has effectively conceded the argument that Agent Hughes initiated the conversation since they did not respond to Argument III of the Defendant's Opening Memorandum.

a picture of Agent Hughes' dialogue with Mr. Davis as reasonable. However, at no time does the Government respond to the fact that in addition to Agent Hughes' statements and prior to any waiver of <u>Miranda</u> rights, Hughes **ordered** Mr. Davis to look him in the eyes (VT-5); the videotape of the interrogation shows this to be true. The Government tries to explain away Agent Hughes' numerous statements as providing "information" to assist Mr. Davis in deciding whether he wished to make a statement to law enforcement. However, it is apparent that Agent Hughes was only trying to undermine the protections that are inherent in the advisement of <u>Miranda</u> rights. By creating fear, urgency, and desperation, and ordering him to obey his commands,[5] Agent Hughes understood that it was more likely that Mr. Davis would agree to speak with him and waive his <u>Miranda</u> rights. Agent Hughes got what he wanted, an eventual waiver of <u>Miranda</u> rights, but one which violated the Constitution.

In its Opening Memorandum, the Defense outlined how Agent Hughes' numerous statements constitute the functional equivalent of interrogation. <u>Rhode Island v. Innis</u>, 446 U.S. 291, 299-301, 310 (1980); (See Opening Memorandum at pages 4-5, 14-19). This argument was not responded to by the Government, thus conceding this issue. Even after Agent Hughes finally advised Mr. Davis of his <u>Miranda</u> rights, Hughes did not give Mr. Davis time to think and react as Hughes continued to make multiple interrogation statements.[6] (VT-5). Once again, this was not rebutted by the

---

[5] Prior to the advisement of <u>Miranda</u> warnings, Agent Hughes increased the coercive environment of his interrogation of Mr. Davis by showing to him his criminal record, stating that 100 grams of heroin were found in Davis' vehicle, telling him that federal criminal charges would be filed against him, requiring a minimum mandatory sentence of 5 years of incarceration, and opining that Davis may be a "career offender" (T-80, VT-4). The coercive nature continued after Mr. Davis was advised of his Miranda rights, prior to any waiver. <u>See</u> Footnote 6.

[6] Agent Hughes made statements after advising Mr. Davis of <u>Miranda</u>, but prior to a <u>Miranda</u> waiver being obtained, concerning cooperation, the need to make a decision regarding cooperation, ordering Mr. Davis to look him in the eyes, and the Agent's opinion that Mr. Davis would not be released on bail. (VT-5)

Government.

The Government declined to respond to a litany of case law cited by Mr. Davis which describes Agent Hughes' conduct as coercive and of the type which make <u>Miranda</u> warnings "ineffective by waiting for a particularly opportune time to give them." <u>Missouri v. Seibert</u>, 542 U.S. 600, 612 (2004). The lack of analysis in the Government's Answering brief demonstrates the lack of valid counter-arguments. In looking at the totality of the circumstances, this Court must conclude that the coercive atmosphere created by Agent Hughes induced an involuntary waiver of <u>Miranda</u> rights. <u>See</u> <u>United States v. Walton</u>, 10 F.3d 1024, 1028-29 (3d Cir. 1993); <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986). Thus, this Court must suppress the fruits of the violation of Mr. Davis' <u>Miranda</u> rights.

<pre>
                                        /s/ Christopher S. Koyste
                                        Christopher S. Koyste, Esquire
                                        Assistant Federal Public Defender
                                        704 King Street, Suite 110
                                        Wilmington, Delaware  19801
                                        Attorney for Defendant Eric Davis
</pre>

DATED: December 30, 2005

5

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that a copy of Defendant's Reply Memorandum is available for public viewing and downloading and was electronically delivered on December 30, 2005 to:

Ferris Wharton, Esquire
Assistant United States Attorney
1007 Orange Street, Suite 700
Wilmington, DE 19801

/s/ Christopher S. Koyste
Christopher S. Koyste, Esquire
Assistant Federal Public Defender
704 King Street, Suite 110
Wilmington, Delaware  19801
Email: ecf_ck@msn.com
Attorney for Defendant Eric Davis